UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ANTONIO ROBINSON**                                    **CIVIL ACTION**

**VERSUS**                                              **NO. 19-12219**

**FLOYD BAKER ET AL**                                   **SECTION: "H"**

### ORDER AND REASONS

Before the Court is Defendants Associated Wholesale Grocers, Inc. and Floyd Baker's Motion for Summary Judgment (Doc. 45). For the following reasons, Defendants' Motion is **GRANTED.**

### BACKGROUND

Defendant Associated Wholesale Grocers, Inc. ("AWG") is a national food wholesaler that operates a warehouse complex in Pearl River, Louisiana as part of its distribution network. Defendant Floyd Baker ("Baker") was the Senior Human Resource Manager at AWG during Plaintiff's employment with AWG. Plaintiff Antonio Robinson worked for AWG at the Pearl River facility from July 2013 through March 15, 2017. This is an action for retaliatory discharge under the Fair Labor Standards Act ("FLSA") and interference with Plaintiff's rights under the Family and Medical Leave Act ("FMLA").

Plaintiff began working for AWG at the Pearl River facility in July of 2013 as a laborer and later as a leaderman, for which he was compensated at

1

an hourly rate. In January of 2017, Plaintiff was promoted to the salaried position of Dock Supervisor. Plaintiff contends that he initially declined the promotion as he believed he would make less money as a supervisor for doing much of the same work. Plaintiff states that he only accepted the promotion after he was threatened by his supervisors, Lloyd Faircloth and Beau Stewart, that they would limit his schedule to 40 hours per week, precluding him from meeting his child support obligations, if he did not accept the promotion. Following his promotion, Plaintiff alleges that he complained to Defendant Baker that he was working more and paid less as a supervisor than he had in his previous position.[1]

In late 2016 or early 2017, AWG, at the behest of AWG Senior Manager of Corporate Security Jerry Burke ("Burke"), began an undercover investigation into possible unlawful activity occurring on the AWG premises. AWG contends that the investigation was prompted by a series of reports that employees at its Pearl River distribution facility were using and selling drugs. As part of the investigation, AWG contracted with Brewer Detective Investigations Worldwide, which provided an investigator (the "Brewer Investigator") to work undercover as an AWG employee from January 30, 2017 to March 5, 2017. Throughout that period, the Brewer Investigator provided regular reports to Burke, who oversaw the investigation from AWG's corporate headquarters in Kansas City, Kansas.[2] Around March 15, 2017, Burke came to the Pearl River facility to meet with the individuals mentioned in the Brewer Investigator's report.

On March 8, 2017, Plaintiff left work and went to the hospital for chest

---

[1] Doc. 45-4 at 14–16.
[2] Although it is undisputed that the Brewer Investigator reported to Burke, it is disputed which other members of AWG management were privy to the undercover operation.

pains. Plaintiff was subsequently diagnosed with pneumonia and remained in the hospital until March 10, 2017. When Plaintiff was discharged, his doctor advised him to remain home for at least an additional five days before returning to work.[3] On March 15, 2017, Plaintiff returned to work for the first time since falling ill, only for the purpose of retrieving insurance documents and informing his supervisors that he was ready to return to work. When Plaintiff arrived at the facility, Plaintiff met with Baker and discussed his illness and his desire to return to work the next day. After his meeting, Baker told Plaintiff that Burke was waiting to meet with Plaintiff across the hall.

In Plaintiff's meeting with Burke, Burke informed Plaintiff that the Brewer Investigator had overheard a conversation on February 20, 2017, whereby another employee informed Plaintiff that he (the other employee) had previously taken Xanax.[4] Burke explained that, as a supervisor, Plaintiff should have reported the incident and that his failure to do so required disciplinary action. According to Plaintiff, Burke then gave him the option to either "voluntarily resign or be fired in a 'do not hire' status."[5] Plaintiff agreed to sign the resignation form. At some point, Baker joined the meeting and acted as a witness to Plaintiff's resignation.

On August 16, 2019, Plaintiff filed the instant suit, alleging that AWG and Baker (collectively "Defendants") violated Plaintiff's rights under the FLSA and FMLA. Specifically, Plaintiff contends that Defendants violated the FLSA when they terminated him out of retaliation for his complaints regarding his role and pay as a supervisor. Plaintiff also contends that Defendants failed

---

[3] *See* Doc. 45-4 at 25.
[4] Whether the employee was referring to prescribed use or recreational use of the drug is disputed.
[5] Doc. 71-6 at 17.

to inform Plaintiff about the existence and availability of FMLA leave and consequently interfered with Plaintiff's right to take FMLA leave and be restored to his prior employment position in violation of 29 U.S.C. § 2615(a)(1).[6] Plaintiff's claim that he was misclassified as a salaried worker in violation of the FLSA is the subject of a separate lawsuit.

Now before the Court is Defendants' Motion for Summary Judgment, wherein Defendants ask the Court to dismiss Plaintiff's claims against them.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[8] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[10] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts

---

[6] Doc. 1 at 5.
[7] FED. R. CIV. P. 56.
[8] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[9] *Id.* at 248.
[10] Coleman v. Hous. Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).

showing the existence of a genuine issue for trial."[11] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[12]

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[13] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[14] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[15]

## LAW AND ANALYSIS

In Defendants' Motion for Summary Judgment, they ask that the Court to dismiss Plaintiff's claims under both the FLSA and FMLA. The Court will thus address the merits of Defendants' Motion with respect to each cause of action in turn.

**A. Fair Labor Standards Act**

Plaintiff alleges that his termination was an act of retaliation in violation of the FLSA. Under the FLSA, it is unlawful for an employer:

to discharge or in any other manner discriminate against any

---

[11] Engstrom v. First Nat'l Bank, 47 F.3d 1459, 1462 (5th Cir. 1995).
[12] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[13] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[14] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[15] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.[16]

In *McDonnell Douglas Corp. v. Green*, the Supreme Court introduced the analytical framework to be applied in retaliation claims.[17] Although *McDonnell Douglas* was a Title VII case, the *McDonnell Douglas* framework has been applied and adapted to other claims of employment discrimination, including claims under the FLSA.[18]

Accordingly, to succeed in his case of retaliation under the FLSA, the plaintiff must "make a *prima facie* showing of: (1) participation in a protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action."[19] If the plaintiff can make the appropriate showing, the burden shifts to the defendant to "articulate a legitimate, non-discriminatory reason for its decision."[20] Finally, the burden then shifts back "to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination."[21]

Applying the *McDonnell Douglas* framework to the matter at hand, Plaintiff must first show that he participated in a protected activity under the FLSA. Under 29 U.S.C. § 215(a)(3), protected activity includes "filing a complaint." The Fifth Circuit has held that informal, internal complaints can

---

[16] 29 U.S.C. § 215(a)(3).
[17] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), *holding modified by* Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993).
[18] Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 624 (5th Cir. 2008); Lasater v. Texas A & M Univ.-Commerce, 495 F. App'x 458, 461 (5th Cir. 2012).
[19] *Hagan*, 529 F.3d at 624 (internal citations omitted).
[20] *Id.*
[21] *Id.*

constitute protected activity under the FLSA.[22] In order to rise to the level of protected activity, however, "the 'employer must have fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation' and the 'complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection.'"[23] "Though a plaintiff need not explicitly refer to the FLSA statute itself, the complaint does need to be framed in terms of potential illegality."[24]

Here, Plaintiff contends that he complained to Baker, the Senior Human Resources Manager, that he was getting paid less for working more hours and doing the same kind of work that he performed as an hourly employee.[25] Specifically, Plaintiff testified that he told Baker that "I'm still here all these hours . . . still doing the same job, you know, and I'm not getting paid right."[26] Plaintiff also contends that he explained to Baker that his supervisors "forced" him into taking the salaried position and that he was not getting paid "fairly anymore."[27] The Court finds that a reasonable factfinder could find Plaintiff's complaints sufficient to place AWG on notice that Plaintiff felt that AWG had violated his rights and that AWG's payment structure was potentially illegal. Plaintiff's showing that he engaged in protected activity is therefore sufficient to survive summary judgment.[28]

---

[22] *Id.* at 625–26.
[23] *Lasater*, 459 F. App'x at 463 (quoting Kasten v. Saint-Gobain Performance Plastics Corp. 131 S. Ct. 1325, 1334–35 (2011)).
[24] *Id.* (citing *Hagan*, 529 F.3d at 626) (The employee must "somehow step[] outside of his normal job role" and make clear that he is "taking a position adverse to the employer.").
[25] Doc. 45-4 at 15–16.
[26] *Id.* at 15.
[27] *Id.*
[28] *See Hagan*, 529 F.3d at 626 ("The circumstances that may constitute an informal complaint under the FLSA have included . . . the fact that an employee 'complained to the

The second step in the *McDonnel Douglas* framework requires Plaintiff to show adverse employment action. The exact circumstances of Plaintiff's "voluntary resignation" are disputed. Plaintiff testified that both Baker and Burke informed him that if he did not resign, AWG would not give him a good recommendation, and he was effectively terminated.[29] Defendants deny that Plaintiff was told that he would get an unfavorable recommendation if he chose not to resign.[30]

A "constructive discharge occurs when an employee has quit her job under circumstances that are treated as an involuntary termination of employment."[31] The Fifth Circuit has found that a resignation may qualify as a constructive discharge in cases where the employee was given an ultimatum to quit or be fired.[32] In such cases, however, the employee must show more than a mere "subjective belief that termination was inevitable."[33] Here, Plaintiff testified that he if he did not resign, AWG would terminate him and give him a poor recommendation.[34] Plaintiff has thus shown more than a mere subjective belief that his termination was inevitable. Accordingly, the Court finds that Plaintiff has demonstrated a genuine issue of material fact as to

---

school district of unlawful sex discrimination and had told them she believed they were 'breaking some sort of law' by paying her lower wages than previously paid to male temporary custodians'; the complaints of female employees to a co-owner of the employer and to a foreman 'about the unequal pay' despite the absence of a formal EEOC complaint at the time of retaliatory discharge." (internal citations omitted)).

[29] Doc. 45-4 at 41–42.
[30] *See* Doc. 45-6 at 4.
[31] Haley v. All. Compressor LLC, 391 F.3d 644, 649 (5th Cir. 2004) (citing Young v. Southwestern Sav. & Loan Ass'n, 509 F.2d 140, 144 (5th Cir.1975)).
[32] *See* Perret v. Nationwide Mut. Ins. Co., 770 F.3d 336, 338 (5th Cir. 2014) (discussing Fifth Circuit precedent on the issue).
[33] *Id.*
[34] Doc. 45-4 at 41–42.

whether he suffered adverse employment action.[35]

The third step in the *McDonnel Douglas* framework requires Plaintiff to show a causal link between the activity and the adverse action. The causation standard is more relaxed at the prima facie stage, and Plaintiff need only prove "a causal connection" rather than "but-for causation" at this step in the burden-shifting analysis.[36] Additionally, in some cases where the temporal proximity between the protected activity and the adverse action is "very close," temporal proximity alone can establish causation.[37]

Defendants argue that Plaintiff's claim must fail at the causation stage because Plaintiff cannot show that the individual who chose to take adverse action against Plaintiff, Burke, knew of Plaintiff's prior FLSA complaints. Indeed, the Fifth Circuit has held that "in determining whether an adverse employment action was taken as a result of retaliation, our focus is on the final decisionmaker."[38] The Court thus agrees with Defendants that Plaintiff must demonstrate a genuine issue of material fact as to whether Burke had knowledge of Plaintiff's prior complaints or whether someone with knowledge of Plaintiff's complaints was involved in the resignation decision.[39]

Plaintiff testified that Beau Stewart and Lloyd Faircloth "forced" him to

---

[35] *See* Faruki v. Parsons S.I.P., Inc., 123 F.3d 315, 319 (5th Cir. 1997) (finding a genuine issue of material fact "on the discharge element" where plaintiff testified that his employer told him that he had one week before he would be placed on indefinite unpaid leave and that he should find another job).

[36] Garcia v. Prof'l Contract Servs., Inc., 938 F.3d 236, 242 (5th Cir. 2019).

[37] Everett v. Cent. Miss., Inc. Head Start Program, 444 F. App'x 38, 46 (5th Cir. 2011); *see also* Starnes v. Wallace, 849 F.3d 627, 634 (5th Cir. 2017).

[38] Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376, 385 (5th Cir. 2003) (quoting Gee v. Principi, 289 F.3d 342, 346 (5th Cir. 2002)).

[39] Defendants cite to Wiseman v. New Breed Logistics, Inc., 72 F. Supp. 3d 672, 678 (N.D. Miss. 2014) ("[T]emporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." (internal quotations and citations omitted)).

accept the position as supervisor over his objections[40] and that he complained to Baker about his compensation.[41] These three individuals are the only members of AWG management that Plaintiff testified would have knowledge of his engagement in protected activity. Defendants contend that Burke did not consult with any of these individuals in deciding whether to request Plaintiff's resignation. Further, Burke's affidavit states that his decision to request Plaintiff's resignation was based solely on the Brewer Investigator's report, and that he did not know of Plaintiff's complaints at the time he made his decision.[42]

To rebut Defendants' assertion, Plaintiff presents evidence that Floyd Baker and Beau Stewart were privy to the existence of the undercover investigation.[43] Plaintiff, however, has failed to produce any evidence that Baker or Stewart had any influence over the resignation decision or informed Burke of Plaintiff's prior complaints. Additionally, the Court finds poignant the fact that Burke worked out of AWG's corporate office in Kansas City and was not a member of the general management team at the Pearl River facility.[44] The limited time that Burke spent at the Pearl River facility therefore makes this case distinguishable from cases finding a genuine issue of fact as to the level of influence the complained-to employer had over of the terminating employer's decision.[45] Thus, without any evidence that Baker or

---

[40] Doc. 45-4 at 68–69.
[41] *Id*. at 14–16.
[42] Doc. 45-6 at 3.
[43] Plaintiff provided evidence that Baker provided the resignation papers at his meeting with Burke and that Baker provided Burke with the picture that the Brewer Investigator used to identify Plaintiff. *See* Doc. 45-4 at 41; Doc. 45-6 at 2.
[44] *See* Doc. 45-2 at 2.
[45] *C.f. Russel*, 235 F.3d at 227–28 (explaining why the evidence presented was "adequate evidence at trial for a jury to find that Ciulla wielded sufficiently great 'informal' power within Homecare such that he effectively became the decisionmaker with respect to

Stewart spoke to Burke about Plaintiff's employment, Plaintiff's claim must fail.

Further, even if Plaintiff could prove a causal link between his requested resignation and his prior complaints, Plaintiff has not carried his burden of demonstrating that "the [Defendants'] proffered reason [for discharge] is a pretext for discrimination."[46] Here, AWG has "articulate[d] a legitimate, non-discriminatory reason for its decision"[47] and provided evidence to support the idea that Plaintiff was asked to resign because he failed to report another employee's drug use. The evidence provided by Plaintiff, namely the deposition testimony of the Brewer Investigator, largely corroborates Defendants' position. The Brewer Investigator testified that he was hired to investigate an ongoing drug problem at the Pearl River facility,[48] that he included in his report that Plaintiff engaged in a conversation about another employee's use of Xanax,[49] and that Burke was the only AWG employee to whom he reported his findings.[50] Plaintiff has not provided any evidence to refute these facts.

Instead, Plaintiff argues that Defendants' proffered reason is inadequate under the *McDonnel Douglas* framework as it has not been articulated "with 'sufficient clarity' to afford the employee a realistic opportunity to show that the reason is pretextual."[51] As support, Plaintiff looks to *Patrick v. Ridge*, where the Fifth Circuit held that "a content-less and nonspecific statement,

---

Russell's termination."); *Starnes*, 849 F.3d at 635 n.7 (finding that there was sufficient evidence to create a factual dispute as to who truly terminated the plaintiff where the non-firing employer "sent out the email announcing which positions were to be eliminated and personally signed both Plaintiffs' termination letters").

[46] *Hagan,* 529 F.3d at 624.
[47] *Id.*
[48] Doc. 69-6 at 16.
[49] *Id.* at 41–44.
[50] *Id.* at 23.
[51] Patrick v. Ridge, 394 F.3d 311, 317 (5th Cir. 2004).

such as that a candidate is not 'sufficiently suited' for the position, is not specific enough to meet a defendant employer's burden of production under *McDonnel Douglas*."⁵² Plaintiff thus argues that Defendants' proffered reason qualifies as the kind of unsubstantiated subjective reason denounced in *Patrick* because Defendants have not presented evidence of "any job description or company policy which makes AWG supervisors responsible for reporting to the company what employees do off the job."⁵³ The Court disagrees.

Unlike in *Patrick*, Defendants here have provided a "clear and reasonably specific basis for [AWG's] subjective opinion" that Plaintiff's failure to report the drug-related conversation warranted Plaintiff's requested resignation.⁵⁴ Defendants have provided evidence that the undercover investigation was an attempt to address an ongoing and serious drug problem at the Pearl River facility.⁵⁵ Additionally, Defendants have provided evidence that Plaintiff was at least one of eight employees who either resigned or were terminated as a product of the investigation.⁵⁶ Although the Court agrees that Plaintiff's requested resignation was a severe consequence for a relatively minor offense, AWG's decision is given credence when viewed in the context of the larger drug problem at the facility. Further, the inquiry is not whether the

---

⁵² *Id*.
⁵³ Doc. 71 at 15.
⁵⁴ *See Patrick*, 394 F.3d at 317. "[I]t might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because 'I did not like his appearance' with no further explanation. However, if the defendant employer said, 'I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders,' or 'because he had his nose pierced' . . . the defendant would have articulated a 'clear and reasonably specific' basis for its subjective opinion—the applicant's bad (in the employer's view) appearance." *Id*. (quoting Chapman v. Al Transp., 229 F.3d 1012, 1034 (11th Cir. 2000) (en banc) (internal quotation marks omitted)).
⁵⁵ In Burke's report to AWG's upper management regarding the investigation, he stated that "[t]he private investigator estimated on 2 separate occasions that 65% of the warehouse employees on his shift come to work with drugs in their system." Doc. 45-6 at 8.
⁵⁶ *See* Doc. 45-6.

"employer made an erroneous decision; it is whether the decision was made with discriminatory motive. '[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason.'"[57] The Court thus finds that Defendants have demonstrated a legitimate, nondiscriminatory motive for Plaintiff's resignation.

Finally, Plaintiff makes the bald assertion that he was "targeted" by the investigation. As support for this assertion, Plaintiff points to the fact that Burke asked the Brewer Investigator to identify Plaintiff after Beau Stewart was allegedly made aware of the existence of the investigation. Again, however, Plaintiff provides no evidence that Beau Stewart was ever made aware of the substance of the investigation or that Burke ever discussed Plaintiff's employment with anyone at the Pearl River facility. Without more, the Court fails to find anything suspicious about this sequence of events. Additionally, Plaintiff incorrectly asserts that he was "the only supervisor identified by Burke and forced to resign."[58] To the contrary, Defendants have provided evidence that Burke also asked two other supervisors to resign as a product of the investigation.[59] Plaintiff has therefore failed to provide evidence that Defendants' proffered reason for Plaintiff's resignation is actually pretext for discrimination.

In sum, Plaintiff has failed to demonstrate a genuine issue of material fact as to whether he was asked to resign because of his protected activity. Consequently, Defendants' Motion for Summary Judgment is granted as to

---

[57] Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995) (quoting *Little v. Republic Ref. Co.,* 924 F.2d 93, 97 (5th Cir.1991)).
[58] Doc. 71 at 22.
[59] Doc. 45-6 at 7.

Plaintiff's claim under the FLSA.

## B. FMLA CLAIMS

### 1. FMLA Interference

Plaintiff claims that Defendants interfered with his rights under the FMLA. To succeed in an FMLA interference claim, the "plaintiff must show that [the defendant] interfered with, restrained or denied [his] exercise or attempt to exercise FMLA rights, and that the violation prejudiced [him]."[60] Plaintiff must thus make the prima facie case that: "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; and (4) he gave proper notice of his intention to take FMLA leave; (5) his employer denied him the benefits to which he was entitled under the FMLA;"[61] and (6) he was prejudiced by the denial.[62] If Plaintiff succeeds in his prima facie showing, Defendants must "articulate a legitimate non-discriminatory reason for the employment action at issue."[63] To survive summary judgment, Plaintiff must raise a genuine issue of material fact that Defendants' proffered reason is pretextual.[64]

Plaintiff claims that Defendants interfered with his rights under the FMLA by failing to give him notice that he was eligible for FMLA leave and by failing to restore him to his job position upon his return. Under the FMLA, "when the employer acquires knowledge that an employee's leave may be for

---

[60] Acker v. Gen. Motors, L.L.C., 853 F.3d 784, 788 (5th Cir. 2017) (internal quotations and citations omitted); *see also* 29 U.S.C. § 2615(a)(1).
[61] Caldwell v. KHOU-TV, 850 F.3d 237, 245 (5th Cir. 2017) (citing Lanier v. Univ. of Tex. Sw. Med. Ctr., 527 F. App'x. 312, 316 (5th Cir. 2013)).
[62] *See* Acker, 853 F.3d at 788; *see also* Park v. Direct Energy DP, L.L.C. No. 19-20878, 2020 WL 6139856, at *3 (5th Cir. Oct. 19, 2020) (citing Ragsdale v. Wolverine World Wide, Inc. 535 U.S. 81, 89 (2002), as requiring proof of prejudice in an FMLA interference claim); Jones v. Children's Hosp., 58 F. Supp. 3d 656, 668 (E.D. La. 2014).
[63] *Id.*
[64] *Id.*

an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances."[65] Defendants do not contest that Plaintiff was eligible for FMLA leave, that AWG was subject to FMLA requirements, or that Plaintiff's illness may have entitled him to FMLA leave. Rather, Defendants contest that their "five days" had not yet expired at the time of Plaintiff's resignation. According to Defendants, the first time that Plaintiff notified AWG of his illness was on the day of his resignation, March 15, 2017, when he sat in Floyd Baker's office. To the contrary, Plaintiff testified that he called AWG while he was in the hospital to let them know of his hospitalization.[66] There is thus at least a genuine issue of material fact as to when Plaintiff provided Defendants with notice of his illness and thus whether Defendants violated the notice provisions of the FMLA.

Defendants contend that, even if the Court finds that Defendants' violated Plaintiff's rights by not designating his time off as FMLA leave, Plaintiff cannot prove that he was prejudiced by Defendants' failure. As Plaintiff was allowed to take leave for the duration of his illness and continued to receive his normal pay while on leave, Plaintiff's only allegation of "prejudice" is that he was denied his right to return to his position following his leave in violation of 29 U.S.C. §2614(a)(1).[67] Defendants correctly note, however, that Defendants' designation of Plaintiff's leave as FMLA leave

---

[65] 29 C.F.R. § 825.300.
[66] Doc. 45-4 at 15.
[67] "[A]ny eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave—(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position . . ." 29 U.S.C. § 2614(a)(1)(A–B).

would not have insulated Plaintiff from lawful termination.[68] "An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA period."[69] Defendants have provided evidence that Plaintiff would have been terminated for his drug-related conversation even if Plaintiff had never taken leave. Plaintiff therefore cannot demonstrate that he was prejudiced by Defendant's failure to designate his leave as FMLA leave. Accordingly, Plaintiff's claim for FMLA interference must fail.

Provided "the similarity between the evidence for FMLA retaliation and FMLA interference when the interference claimed is termination or elimination of the position, many courts doubt the validity of these claims when styled as interference claims."[70] As Plaintiff's complaint alleges that he was terminated *because* he had taken FMLA qualifying leave, his claim is more aptly analyzed as one for retaliation.[71]

### 2. *FMLA Retaliation*

The FMLA prohibits employers from discharging or discriminating

---

[68] *See* Jackson v. St. Charles Par. Hous. Auth. Bd. of Commissioners, 441 F. Supp. 3d 341, 360 (E.D. La. 2020); Terry v. Promise Hosp. of Ascension, Inc., 2014 WL 4161581, at *10 (M.D. La. Aug. 19, 2014) ("[A]n employer is entitled to dismiss an employee for any lawful reason at any time, whether before, during, or after an employee requests or takes leave pursuant to the FMLA, as long as the employer does not discriminate or retaliate against the employee for requesting or taking such leave.").

[69] 29 C.F.R. 825.216(a).

[70] Varise v. H & E Healthcare, L.L.C., No. CIV.A. 10-666-BAJ, 2012 WL 5997202, at *3 (M.D. La. Nov. 30, 2012).

[71] *See* Cuellar v. Keppel Amfels, L.L.C., 731 F.3d 342, 349 (5th Cir. 2013) (J. Elrod, concurring) (emphasizing the need to look to the substance of the plaintiff's claim to determine if the claim is for interference or retaliation); Shields v. Boys Town La., Inc., 194 F. Supp. 3d 512, 527 (E.D. La. 2016) ("Shields' argument appears to be not that she was denied any FMLA benefits or prevented from using any FMLA benefits, but rather that she was retaliated against for using her benefits."); Kendall v. Walgreen Co., No. A-12-CV-847-AWA, 2014 WL 1513960, at *5 (W.D. Tex. Apr. 16, 2014) ("The essence of Kendall's

against employees for exercising their rights under the FMLA.[72] Like Plaintiff's claim under the FLSA, Plaintiff's claim of retaliation under the FMLA is also analyzed under the *McDonnell Douglas* burden-shifting framework.[73] Plaintiff must therefore prove that: (1) he engaged in protected activity; (2) he suffered an adverse employment decision; and (3) that he was either treated less favorably than an employee who had not requested FMLA leave or that the adverse decision was because of his use of FMLA leave.[74] The third element requires Plaintiff to prove a causal link between the protected activity and the adverse action.[75] If Plaintiff succeeds, the burden shifts to Defendants to show a legitimate reason for his termination.[76] Plaintiffs must then show by a preponderance of the evidence that Defendants' reason is pretextual.[77]

Even if Plaintiff could succeed in proving his prima facie case, like his FLSA claim, Plaintiff has failed to present sufficient evidence of pretext. Plaintiff offers no new argument or evidence that would allow the Court to question Defendants' stated reason for Plaintiff's resignation. Thus, for the same reasons stated above in relation to Plaintiff's FLSA claim, the Court finds that Plaintiff has failed to demonstrate a genuine issue of material fact as to whether he was asked to resign because he engaged in protected activity. Defendants' Motion for Summary Judgment as to Plaintiff's FMLA claim is

---

interference claim is that she was retaliated against for taking leave by being fired, not that her rights were simply interfered with.").
[72] 29 U.S.C. § 2615(a)(2).
[73] Bell v. Dallas Cty., 432 F. App'x 330, 333 (5th Cir. 2011).
[74] *Id.*
[75] *Acker*, 853 F.3d at 790.
[76] *Id.*
[77] *Id.*

therefore granted.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 45) is **GRANTED.** Accordingly,

**IT IS ORDERED** that Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this 3rd day of November, 2020.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**